ALLEN B. JONES v. JAMES V. SHAW AND CYNTHIA B. SHAW.

*Vendor and purchaser—Division of costs of litigation of title—Compound interest.*

1. A contract is valid whereby the vendor and purchaser of land agree that the costs and expenses incurred by the latter in a joint defense against an ejectment suit for the land and in a proceeding to enjoin such suit, should be equally divided and that the latter's share should be indorsed upon a purchase money mortgage given by him to the vendor.

2. Compounding of interest is not authorized by How. Stat. § 1599 for the period during which payment is suspended by litigation to determine title to the land, pending which the rate of interest is reduced by agreement.

3. Interest does not run after sufficient tender has been made.

Appeal from Genesee. (Newton, J.) Jan. 15.—April 15.

BILL of foreclosure. Both parties appeal. Reversed.

*George H. & Charles A. Durand* and *Isaac Marston* for complainant.

*Howard & Thayer* and *Geer & Williams* for defendants. A written contract can be orally modified: *Westchester F. Ins. Co. v. Earle* 33 Mich. 153 ; *Seaman v. O'Hara* 29 Mich. 66 ; *Adams v. Dansey* 6 Bing. 506 ; *Allaire v. Ouland* 2 Johns. Cas. 52 ; *Peck v. Thompson* 15 Vt. 637 ; *Tarr v. Northey* 17 Me. 113 ; *Goodspeed v. Fuller* 46 Me. 141 ; *Derwin v. Smith* 35 Vt. 69 : *Marcy v. Crawford* 16 Conn. 549 ; loss or inconvenience is a good consideration : 1 Add. Cont. 21 ; 1 Wait's A. & D. 103 ; *Train v. Gold* 5 Pick. 380 ; *Hilton v. Southwick* 17 Me. 303.

SHERWOOD, J. The bill in this case is filed to foreclose a mortgage on real estate given by the defendants to the complainant. On the 27th day of June, 1872, the defendant Joseph B. Shaw purchased of the complainant one hundred and twenty acres of land, lying in Genesee county, for the sum of $7800, and received a deed therefor, containing full covenants of warranty. Shaw paid complainant $4300 in land at the time he received the deed, and to secure the payment of the balance of the purchase money gave to the complainant his promissory note for $3500, to be paid in yearly installments of $500 each, on and after December 1, 1873, with annual interest at seven per cent. until due, and ten per cent. thereafter, with the privilege of paying the note sooner in sums of $200 at a time, and also gave a mortgage upon the land purchased, to secure the payment of the note. The defendant made payments as they fell due upon the note and mortgage to December 1, 1877, at which time there remained unpaid $2500,—$1000 of which was then past due. In April, 1878, Robert Chambers laid claim to the property, and brought ejectment against Shaw to recover the same. Soon after the commencement of this suit Shaw gave notice to complainant of the claim made by Chambers, and the proceedings he had taken in the premises, and required com-

plainant to defend against the same. After the parties had some consultation the defendant Shaw filed a bill in chancery and enjoined the prosecution, for the time being, of the ejectment suit. The suit in chancery was decided against Shaw both in the circuit court and on appeal taken by him to this Court. See *Shaw v. Chambers* 48 Mich. 355. Chambers was then permitted to prosecute his ejectment suit against the defendants, and was defeated therein both in the circuit and on removal of the same to this Court. See *Chambers v. Shaw*, 52 Mich. 18.

In the facts thus far stated the parties substantially agree. The defendants, however, set up in their answer, as defense to the complainant's bill by way of reduction of the amount he claims to be due upon the note and mortgage, that after the ejectment suit was instituted defendant J. V. Shaw and complainant had an interview which resulted in commencing the injunction suit, and in which the following agreement was made between them with reference to the defense to be made against the claim of Chambers and the costs and expenses thereof, viz., that they would defend against said claim together, and whatever costs and expenses should be incurred in the defense of the ejectment suit or in the prosecution of the suit in chancery which was commenced by Shaw, should be shared equally by complainant and defendant Joseph V. Shaw, and that whatever the latter should pay more than his half of such costs and expenses should be indorsed upon the said mortgage. The note and mortgage were drawing ten per cent. interest, and defendants claim that it was further agreed that defendant should pay no more interest until the validity of the title to defendant's farm should be established, and that until that time the rate of interest should be reduced to eight per cent. This agreement is denied by the complainant in his testimony; and he further testified that he made a proposition to pay one-half of the costs and expenses if Shaw would enter into an agreement that if unsuccessful in the ejectment case he would only claim of complainant one-half the damages he had sustained by reason of the failure of title; that Shaw refused, and no agreement was made.

It further appears, and I think is not seriously disputed, that the litigation continued about five years before defendant Shaw's title was confirmed, and that in his efforts taken and defense prosecuted against the claims made by Chambers, he incurred liability in costs and expenses to the amount of $1350.37, any part of which the complainant refused to allow or pay, and claims in this suit payment by Shaw of the full amount of the mortgage, figuring the interest at ten per cent., and interest upon interest under the statute of 1869. It is averred in the answer, and the testimony shows that on the 21st day of December, 1883, before this suit was commenced, defendant Joseph V. Shaw made a tender to complainant of $3300, which he claimed to be the full amount then equitably owing upon the mortgage, and asked complainant to discharge the same, defendant having previously furnished to complainant a statement of the costs and expenses paid by defendant and requested complainant to indorse one-half thereof upon the mortgage, in pursuance of his alleged agreement so to do. The circuit judge found from the evidence that the complainant made the contract for the payment of costs and expenses with the defendant Shaw substantially as he claims, except that it did not apply to those relating to the ejectment suit; that, leaving out one-half of them, including attorney's fees, there was not enough tendered to pay the mortgage at the time it was made, and gave the complainant a decree for the sum of $3544.73. From this decree both parties have appealed.

The validity of the contract between the complainant and Shaw, set up by the latter, if made, does not seem to be seriously contested; and if it were, I think the authorities cited by defendants' counsel clearly sufficient to sustain it. I quite agree with the learned circuit judge,—"after reading over all the testimony in the case, and giving it careful consideration, in view of the situation of the parties, and the interest each had in the property, that the preponderance of the evidence is in favor of the defendants' version of the agreement;" and while he applies it to the case so far as the costs and expenses relate to the chancery suit, he is not fully satisfied

from the testimony that the agreement included those relating to the ejectment suit. I have failed to find any testimony in the case showing any of the expenses, costs and charges in either the ejectment or chancery cases to be unreasonable. The attorneys employed by the defendants were all men of experience, learning and ability, and whose integrity is unquestioned. I think there is no doubt but that everything which was done by the defendants and their attorneys in making defense against the claim of Chambers was done in the best of faith, and I think the evidence is quite satisfactory that the complainant's opposition to anything that was done by the defendants was not forcible, or intended to be controlling even by him. I am also unable to discover from the testimony, or any of the circumstances in the case, why, if the defendants should be allowed the application upon the mortgage of half the costs, expenses and disbursements in the chancery case, they should not be in the ejectment case. The latter was the more important of the two, and the former was only one mode of defending against the latter. The expenses which the complainant was to share in either case depended upon the same agreement, which is supported by the same testimony. There was as much occasion and as much justice in his sharing the expense in the one as in the other, and I think he should do so, and the amount in both cases should be credited on the mortgage.

Both parties having appealed, it becomes our duty to examine not only the merits of the complainant's case, but also each and every ground of equitable defense set up in the answer which was litigated. Upon the modified agreement being made, but eight per cent. was to be charged upon the mortgage during the pendency of the litigation. Payment of the mortgage and interest was suspended. It can hardly be claimed that under the modified agreement, and the circumstances under which it was made, the defendants should pay interest upon interest. I do not think the statute of 1869 was intended to cover any such case, and it would be great injustice to give it such application. I think half of the costs and expenses should be allowed defendants in both

cases, and no interest on interest should be paid by them, and if the amount which Mr. Shaw tendered was sufficient at the time the tender was made, no interest should be recovered thereafter. The tender that was made does not seem to be questioned.

The decree rendered by the circuit judge must be reversed, and a new decree entered in this Court in accordance with the views herein expressed, with costs to defendants of both courts, and three months will be given for defendants to make payment of the amount found to be due, and in default thereof the decree must contain the usual order for sale of the mortgaged premises to satisfy the amount.

The other Justices concurred.