The CITY OF AUSTIN et al., Petitioners,

v.

The AUSTIN NATIONAL BANK OF AUSTIN, Texas, et al., Respondents.

No. B-3771.

Supreme Court of Texas.

Dec. 12, 1973.

Rehearing Denied Jan. 16, 1974.

Don R. Butler, City Atty., Richard E. Tulk, Asst. City Atty., Jack F. Cook, Jr., Davenport & Davenport, John Davenport, John L. Hill, Atty. Gen., Robert L. Lemens, Asst. Atty. Gen., Austin, Texas, for petitioners.

Hart & Keahey, James P. Hart, Brown, Maroney, Rose, Baker & Barber, Robert L. Davis, Peter P. Zaremba, Kendall, Randle, Finch & Osborn, Gibson R. Randle, Austin, for respondents.

POPE, Justice.

Austin National Bank, plaintiff and executor of the estate of Mrs. Mary Mayfield Gutsch, obtained a judgment in this declaratory action that Mrs. Gutsch intended by her will that the residue of her estate should be held in a perpetual charitable trust with the Austin National Bank as trustee and the Humane Society of Austin and Travis County as the beneficiary. The trial court also construed the will as giving to Ann Knight Hoey a choice of all tangible personalty found in the testatrix' house at her death, except for two items specifically bequeathed to another person.

The trial court further ruled that the will devised the Gutsch home and the land upon which it was located to the City of Austin upon condition subsequent that it shall be used as a public park and shall not be used for any other purpose or any other organization, except as the use, including other organizations, is consistent with a use as a public park. The court of civil appeals affirmed the judgment of the trial court. 488 S.W.2d 586. We reverse that part of the judgment of the courts below which declared that the testatrix intended to establish a perpetual trust for the residue of the estate, but we affirm the judgments in all other respects.

Mrs. Gutsch's holographic will was as follows: [1]

November 11th 1969

This is the one & only will of Mary Mayfield Gutsch.

(1) I want the Austin National Bank to administer my estate.

wills

All others / have been destroyed --

(2) Ann Knight Hoey $5000 ----

(3) ~~Dr. & Mrs. C. M. Darnall $5000~~

(4) ~~Esteban Arrendondo $2500.~~

(5) ~~and Magdalena Martinez~~

if in my employ

(6) Salimes Ramirez $2500 at time of my death

(7) Joe Bragg $1000 Also he has a complete understanding of the emtire [sic] estate -- and should be paid for his work

(8) Peggy Thomson will take care of the contents of my house -- -

(9) The home [house] & acreage is left to the City of Austin as a park to be used for no other purpose --- not to be used by any other organization --- otherwise it shall be given to the Austin Travis County Humane Society - Park to be known as Mayfield Park ---

(10) All of the income from the remainder of my estate shall go to the Hu-
Linam
mane Society with Dr ~~Lynum~~ on the board ---

(11) Flower pin with diamnd [sic] to Peggy Thomson --- & blue cross.

(12) My dog shall be put to sleep by Dr Linam
~~Lynum~~ at home and and buried in my yard --

(13) cremation for myself ---- Episcopal service at home private. ashes scattered in yard by Jack Corley ---

(14) Ann Hoey has choice of any or all furniture also all silver -- or any other household wares ---- give minister a gift of $250

(15) Nothing to be sold at house -- everything left to be given to Goodwill Industries -- & moved out not disposed of at home [house]

(16) The Merchants & Planters National Bank of Sherman shall have no part of the settlement of my estate ....

~~They h~~

Dr. Darnall will testify I am in my right mind.

Mary Mayfield Gutsch

The Austin National Bank urges that paragraph 10 of the will shows that Mrs. Gutsch in giving "all the income from the remainder of my estate" intended to give something less than the entire residue of the estate to the Humane Society. The bank argues that Mrs. Gutsch intended to create a trust, by reason of Mrs. Gutsch's prior transactions with it and her confidence in it, together with her testamentary designation of the Bank in paragraph one as the party who is "to administer my estate."

In our opinion, the will does not manifest a clear intent to separate the income from the corpus nor to create a trust. The residue of Mrs. Gutsch's estate consisted of stocks, bonds, and cash. With respect to gifts of income from personalty, 4 PAGE,

---

1. Numerals have been added to aid our discussion.

LAW OF WILLS § 33.40 (Bowe-Parker revision, 1961), is helpful in stating the general rule:

Prima facie a gift of income arising from personalty without any restriction as to the time for which such income is to be paid and without any disposition of the corpus of the fund, is an absolute gift of such corpus. This, however, is only a prima facie inference and it may be defeated by a contrary intention of testator, as deduced from the language of the will taken as a whole and from the surrounding circumstances. *If testator's intention to separate the corpus from the income is clear, full effect will be given thereto.* A gift of income for a limited time shows an intention not to pass the corpus. A gift over, after the determination of a prior interest, shows that testator did not intend that the corpus should pass to the first taker; but if he gives the income, after the interest of the first taker has determined, to another without any limit on the time for which he is to receive the income, the subsequent taker is given the corpus. (Emphasis added.)

The same general rule as applied to both realty and personalty is stated in 174 A.L.R. 319 (1948), 96 C.J.S. Wills § 785c (1957), and 57 Am.Jur., Wills § 1196 (1948).

■ Texas courts have consistently applied the income-corpus rule to real property in cases where all requirements for the rule's application have been met. In Gidley v. Lovenberg, 35 Tex.Civ.App. 203, 79 S.W. 831, 835 (1904, writ ref'd), the court construed a will which bequeathed all of the revenue from specified realty for the purpose of establishing a perpetual fund for a named charity. The court stated that "[s]uch a use necessarily includes the corpus" and held that the will devised to the charity the lots and improvements as well as the income they produced. In Atkinson v. Kettler, 372 S.W.2d 704 (Tex.Civ.App. 1963), aff'd, 383 S.W.2d 557 (Tex.1964), the testatrix' holographic will directed that her ranch property be set up in a perpetual trust and never be sold, the income therefrom to be divided among the testatrix' blood heirs "as long as there is a blood heir of mine living." The court held that this disposition violated the Rule Against Perpetuities. The court stated the income-corpus rule from 96 C.J.S., *supra,* "A gift of the interest, income, or product of a fund, or property, without limit as to time, and without other disposition of the corpus, will pass the fund or property itself, regardless of whether the bequest is direct to the beneficiary or through a trustee . . . ." The court applied the rule so as to create life estates in the blood heirs of the testatrix at her death, with the remainder in fee to be divided among their children. This court refused, with good reason, to apply the rule in Haile v. Holtzclaw, 414 S.W.2d 916 (Tex.1967). The testator's gift to his widow in that case was not of *all* the income from the property in question and without time limit as is the case here, but of two-elevenths of the royalty income from the property for her life and all of the nonroyalty income without time limit; the remaining royalty income went to other members of the family. The will made no disposition of the realty itself and the court rejected the widow's heirs' contention that her right to expend the nonroyalty income carried with it the fee title to the corpus.

Texas courts have also dealt with gifts of a life estate in personalty with no gift over, a concept which is similar to the one now before us. In McNabb v. Cruze, 132 Tex. 476, 125 S.W.2d 288, 289 (1939), the court construed a will in which the testator provided that his surviving widow would have a life estate in all of his property both real and personal. The court stated the rule concerning personal property in these words: "[I]t is a well settled rule that life estates in personal property are not favored. By this is meant that the first taker will be given an absolute fee, instead of a life estate, unless the language of the will clearly and unequivocally manifests a different intention. It is also well

settled that as regards personal property language which usually confers a life estate, unless followed by a gift over, vests title absolutely." The court concluded concerning the unmentioned remainder of the personalty in which the wife took a life estate, "The evidence shows that there was a substantial personal estate other than these two notes. There was no gift over of any of this personal property. Under Item II [that item vesting a life estate in Mrs. McNabb] Mrs. McNabb took same absolutely." Benson v. Greenville Nat. Exchange Bank, 253 S.W.2d 918 (Tex.Civ. App.1953, writ ref'd n. r. e.), also held that language which usually confers a life estate vests title to personalty absolutely unless it is followed by a gift over.

In Glover v. Glover, 331 S.W.2d 804 (Tex.Civ.App.1960, no writ), the court ruled that a testator who gave his two brothers and a sister a life estate in his stocks and bonds without provision for a remainderman or a gift over at their deaths, intended to pass title to the stocks and bonds to the named legatees. The court quoted from McNabb v. Cruze, *supra,* and 96 C.J.S. Wills § 785. See also, Syfer v. Fidelity Trust Co., 184 Md. 391, 41 A.2d 293 (1945); Annot., 174 A.L.R. 333 (1948).

Mrs. Gutsch placed no time limit upon the enjoyment of the income nor did she make any disposition of the corpus of the fund or otherwise restrict its use by the income donee, and we conclude that she had no intent to sever the income from the corpus. "Nothing else appearing, the grantor or testator is presumed to be designating the property by its fruits . . . ." 174 A.L.R. 323 (1948).

Mrs. Gutsch did not manifest a clear intent to create a trust. Autrey v. Stubenrauch, 133 S.W. 531 (Tex.Civ.App.1911, writ ref'd); G. Bogert, Trusts and Trustees, § 324 at 665 (1953); 57 Tex.Jur.2d, Trusts §§ 25, 26. The part of the will

which the bank urges as an expression of such an intent is the first sentence, "I want the Austin National Bank to administer my estate." This sentence is usual to a non-trust situation and it had a very real purpose in Mrs. Gutsch's will. Somebody had to (1) gather up the estate and see that several persons received their specific bequests and legacies, (2) work with Joe Bragg who had a complete understanding of the entire estate and see that Bragg was paid for his work, (3) see that Mrs. Gutsch's dog was put to sleep, by Dr. Linam, at home, and buried in the yard, (4) see that Mrs. Gutsch was cremated and the ashes scattered as directed, (5) see that Ann Hoey made her choice of furniture and silver or other household wares, (6) pay the minister $250.00, (7) see that nothing was sold at the house, and (8) see that everything that was left should reach Goodwill Industries. These duties would not take care of themselves, and are usual to winding up an estate and an administrator's services. The testatrix named no trustee in the will, stated no duties usual to a trustee and did not say she desired to keep her estate going. In fact, in paragraph 10 she said that "the income from the remainder of my estate shall go to the Humane Society," not to or through someone else.

A fact considered by the lower courts in determining the intent of the testatrix was a note written by Mrs. Gutsch that was found with her will but not admitted to probate. The note referred to paragraph 9, the gift to the City of Austin for a park. The note was:

"Home with acreage to be used for park otherwise to be given to trust for Humane Society *to be sold or used by them.*"

Despite the use of the word, "trust," the right to sell the land is given to the Humane Society, not to a trustee or administrator. Hence this language is no more

unequivocal in showing an intention to create a trust than is the will itself.

 A trust is not reasonably essential to the fulfillment of the testatrix' will and we believe that a perpetual trust should not rest on so thin a foundation. We hold that neither the language of this will nor the surrounding circumstances manifest a clear intent by the testatrix to separate the corpus of the residue of her estate from its income and that she did not create a trust.

The courts below construed paragraph 14 of the will to include a bequest to Ann Hoey of such jewelry in Mrs. Gutsch's estate as she may select. By paragraph 15 of the will, Mrs. Gutsch provided that "everything left to be given to Goodwill Industries—& *moved out* not disposed of at home." We do not decide whether the construction given by the courts below to paragraph 14 is correct. We affirm that part of the judgments of the courts which ruled that Ann Hoey is entitled to the jewelry, because Goodwill Industries does not here urge that it should receive the jewelry.

The City of Austin complains of that part of the judgments of the lower courts holding that paragraph 9 was a devise to the City of Austin on condition subsequent. Those courts correctly construed paragraph 9.

We reverse that part of the judgments of the courts below holding that Mrs. Gutsch established a perpetual charitable trust, and we render judgment that the corpus of the remainder of Mrs. Gutsch's estate, as well as the income, passed to the Humane Society. In all other particulars the judgments are affirmed.

McGEE, J., notes his dissent.

GREENHILL, C. J., not sitting.